(112 So. 408)

No. 28227.

### Succession of HAUSMANN.

March 28, 1927.

*(Syllabus by Editorial Staff.)*

1. **Executors and administrators** ⬤➡10—**Succession; evidence held to support finding that domicile of decedent was in Orleans parish, giving district court thereof jurisdiction to administer his estate.**

Evidence *held* sufficient to support finding that domicile of decedent at time of death was in parish of Orleans, giving district court thereof jurisdiction to administer his estate rather than parish of St. Mary, where he moved to New Orleans prior to death and established residence there by remaining for more than one year.

2. **Domicile** ⬤➡4(1)—**In absence of notarial declaration, "change of domicile" from one parish to another requires both removal and intention to remain.**

To effect a change of domicile from one parish to another, when not evidenced by a notarial declaration, there must be both the fact of removal and an intention to remain in district removed to.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Change.]

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Succession of David Hausmann. Proceeding by Maurice E. Norman attacking the probate proceedings, in which the will of David Hausmann was probated and Harry A. Koritzky was confirmed as testamentary executor, on the ground that the court was without jurisdiction to administer the estate. The plea to the jurisdiction was overruled and Norman appeals. Affirmed.

Brumby & Bauer, of Franklin, and W. O. Hart, of New Orleans, for appellant.

Benjamin Y. Wolf, of New Orleans, for appellee.

BRUNOT, J. The deceased was born in the town of Patterson, St. Mary parish, where he resided until February, 1924. He was a retail merchant and actively engaged in the conduct of his business until the latter part of 1923, when he suffered a stroke of apoplexy, which was followed by paralysis. Thereafter he did nothing. He was first taken to a local sanitarium, but during the month of February, 1924, he moved to New Orleans, where he died on January 16, 1926. The decedent was never married; he left no forced heirs or collaterals nearer than the fourth degree, but he died testate and his will was presented to the civil district court of Orleans parish for probate. The will was probated, Harry A. Koritzky was confirmed as testamentary executor of decedent, and an inventory of the estate was ordered. The day following these proceedings, Maurice E. Norman, a cousin of the deceased, attacked the probate proceedings on the ground that the decedent was domiciled in the parish of St. Mary at the date of his death and therefore the civil district court of Orleans parish was without jurisdiction to administer the estate. This plea to the jurisdiction was overruled, and from that judgment Maurice E. Norman appealed. The sole question presented is that of the domicile of the decedent at the time of his death.

[1, 2] The learned judge of the civil district court, in a well-considered opinion, has

carefully and accurately summarized the facts. From his opinion we quote, with approval, his findings of fact and his conclusion based thereon:

"Now, as to the facts. Hausmann never married. He and his brothers, I believe, owned a store property on Main street in Patterson. In the rear of this store was a house containing three or four rooms, and Hausmann lived in that tenement.

"The evidence shows that for years previous to his death he was guilty of a practice that is abhorrent and abominable and which, at one time, was widespread in this state, and that is, he took a negro concubine, established her in a home in Patterson, and begot by her a large number of miscegenatious bastards, all of whom he treated, in all respects, as if they had been his legitimate children.

"The evidence convinces me that he did not have the hardihood to do what some men in some portions of this state have done in the past, and that is, to have openly lived with her in the house in which he established her. He did what a great many had done; he had his own domicile and spent his nights in the domicile of his negro paramour when the lust of the flesh called him there.

"I gather from the appearance of his oldest daughter, who testified, that this reprehensible condition endured for over 30 years, and, when he was a man of approximately over 69 years of age, he was stricken with a cerebral hemorrhage, which had the effect of completely paralyzing his right side, paralyzing his tongue, and depriving him of the power of speech, but which did not seem, from the evidence before me, to impair his mental faculties in the least, after the first absorption had taken place.

"At his age, with the trouble he had, he realized his time on earth was short. His oldest daughter was married to a negro physician, named Simms, and she was living in the city of New Orleans about 8 or 10 years at the time this stroke took place.

"Hausmann was removed from the store, where he was stricken, to St. Mary's Sanitarium, situated, I believe, in the town of Patterson, and after remaining there three or four weeks he was removed to the house of his paramour, Anna Dupart.

"The stroke took place in October, 1923, and in February, 1924, plainly by his own wishes made manifest, he and Anna Dupart and all of his dusky brood removed from Patterson, St. Mary parish, to the home of Dr. Simms on Louisiana avenue, in this city. He lived in the house with Dr. Simms for approximately one year, when Anna Dupart, evidently through his directions and desire and under his administration, purchased the house bearing the municipal number 2017 Louisiana avenue, closely adjacent to the home of his eldest daughter, the wife of Dr. Simms, of whom he appeared to be particularly fond.

"After this removal he made no more, as I gather from the evidence, than three short visits back to Patterson, on all of which visits Anna Dupart accompanied him, and they went to the old domicile of Anna Dupart in Patterson, in which one of his daughters, married to a man named Taylor, resided.

"None of these visits lasted more than a week, if that long, and on one of the earlier visits he made there he directed that the furniture in the house back of the store, be removed. Part of it was taken to the old home of Anna Dupart and part of it was sent down to his residence in New Orleans.

"Argument is made that his sole reason for removing from Patterson to New Orleans was so he could obtain here medical treatment which he could not obtain in a little country village.

"But evidently, that was not his intention; the evidence is clear he refused the administrations of any doctors and it was only under great difficulty that he was induced to receive one visit from Dr. Levy, and outside of that one visit by Dr. Levy, the evidence is clear that no other medical man in New Orleans ever saw him, and it is clear, from the evidence, that his object in removing to New Orleans was not to receive the attention of that magnificent corps of medical men, which, to-day and for the past 100 years has been the glory of our city.

"Now, the change of domicile from one parish to another, when not evidenced by a notarial declaration, as the article of the Code (article 42) has prescribed, can only then be established by the facts (article 43) and, it must be made to appear to the satisfaction of the court that, in order to declare the domicile was changed, that there was both the fact of removal and the intention to remain.

"In other words, it must be made clear that there was both by facto et animo; that there was non animo revertendi, but, on the other hand, it must be shown to the court there was animo manendi.

"Now, as Hausmann picked up his entire colored family, his paramour, and what children remained, broke up his home behind the store and only left the old Anna Dupart residence to be occupied by one of his children, the Taylor

BARRETT v. PIERSON

woman, shipped his furniture down here and lived with Dr. Simms and his daughter, the wife of Dr. Simms, for one year, and then purchased a home, into which he and Anna Dupart moved from the Simms residence, and which he lived in for nearly one year, it is conclusive, to my mind, when he made this move from Patterson to New Orleans it was animo manendi et non animo revertendi.

"I think other considerations of the laws of Louisiana make this plain. Under the law, a removal from one parish to another and the lapse of one year removes the right of suffrage in the parish from which the removal took place and gains for him suffrage in the parish into which he moved, and it is plain, if Hausmann so desired, he, in February, 1925, could have registered as a voter in this city and could have lawfully voted, and he could not, as the circumstances show, have registered and lawfully voted in the parish of St. Mary; and I have no hesitancy in declaring, on the day of his death, he was permanently domiciled in the parish of Orleans, and no court other than this court has jurisdiction over his succession, and therefore the petition of Norman will be dismissed."

For these reasons the judgment appealed from is affirmed, at appellant's cost.